UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANNESTINE LEWIS,<br>    Plaintiff,<br><br>v.<br><br>SUFFOLK UNIVERSITY LAW SCHOOL,<br>JANINE LAFAUCI, AND DENISE<br>WHOLLEY,<br>    Respondents. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 13-10995<br>)<br>)<br>)<br>)<br>) |

## **COMPLAINT AND REQUEST FOR A SPEEDY JURY TRIAL**

### **INTRODUCTION**

Plaintiff Annestine Lewis was an employee of Defendant Suffolk University Law School until her wrongful termination in June 2012. Plaintiff seeks relief based on her claims for violation of the Family Medical Leave Act (FMLA). Plaintiff seeks, among other forms of relief, lost wages and benefits, liquidated damages, attorney's fees and costs, as provided for by law.

Pursuant to M.G.L. c. 231, §6F, Ms. Lewis seeks a speedy trial since she is over 65 years old.

### **PARTIES**

1. Plaintiff Annestine Lewis (Ms. Lewis) is an individual residing in Roxbury Massachusetts.

2. Defendant Suffolk University Law School (Suffolk) is a business entity and educational institution located in Boston Massachusetts. Suffolk has more than 50 employees.

3. Defendant Janine LaFauci is an employee of Suffolk and was, at all relevant

times, Ms. Lewis' supervisor.

4. Defendant Denise Wholley is an employee of Suffolk and was, at all relevant times, a manager in Human Resources.

## JURISDICTION

5. The court has jurisdiction pursuant to 28 U.S.C. §1331 based on a claim of violation of the federal Family Medical Leave Act and 29 U.S.C. §201 *et seq*.

## FACTUAL HISTORY

6. Suffolk is an employer in Boston with more than 50 employees.

7. Ms. Lewis worked for Suffolk as a Staff Assistant from June 11, 2001 through June 1, 2012.  At the time of her termination from employment, Ms. Lewis was 67 years old.  Defendant Janine LaFauci (Ms. LaFauci) was her first level supervisor.  Defendant Denise Wholley (Ms. Wholley) was the Human Resources representative for Ms. LaFauci's department.

8. Suffolk issues annual performance reviews to employees. The reviews cover a 12 month period, running from June to the following June. Ms. Lewis had a history of solid performance reviews.  On July 21, 2008, Ms. Lewis received an overall rating of "Exceeds Expectations."  This rating means, "The employee consistently surpassed all requirements of the position.  Accomplishments are significant and superior to the standards of the position.  Performance at this level is rarely achieved by Staff Assistants. Contributions serve as a role model for others."  Ms. Lewis was praised for her hard work, professionalism and dedication, "Tina is extremely professional and responsible. She has high level skills and exceptional time management abilities.  Tina has an extraordinarily busy suite and a very demanding faculty group which necessitates her

consistently juggling and prioritizing a multitude of tasks.  In addition to her regular 35 hour week, Tina frequently works additional hours to ensure faculty work is completed successfully."

9. On June 25, 2009, Ms. Lewis received an overall rating of "Exceeds Expectations."

10. In 2010, Ms. Lewis was transferred from faculty suite 320 to faculty suite 310. Her overall rating, dated July 6, 2010, was "Exceeds Expectations."  This annual review post-dated her transfer.

11. According to her 2010 annual review, Ms. Lewis was "quite successful in her new assignment. She has worked hard to reorganize the front office, purge the area of unnecessary and outdated files, and ensure office supplies are replenished and in an area conveniently accessible to the faculty group.  Tina is a very dedicated and highly dependable employee."   Faculty comments about Ms. Lewis' performance were full of superlatives, "Tina is excellent – efficient, conscientious and dedicated."

12. In 2010, Ms. Lewis took time off under the FMLA to care for her elderly mother, including transporting her to medical appointments. In the 2010 review, Ms. LaFauci cited Ms. Lewis' FMLA leave as part of her goals for 2011:  "Tina has made a tremendous effort to schedule time off with as much advance notice as possible.  We will discuss additional scheduled accommodations (that are not FMLA related) if needed."

13. Ms. Lewis' protected time off under the FMLA did not affect her performance. Ms. Lewis received positive ratings in 2010 for productivity and reliability.  In the former category, Ms. Lewis received a rating of "Meets/Exceeds Job Requirements."  *Id.* at 2.  In the latter category, Ms. Lewis received a rating of "Meets Job Expectations." *Id.*  The

rating of "Meets Expectations" is defined thusly, "The employee met all essential requirements of the position, and may have exceeded some. Accomplishments are clearly in accordance with the standards of the position. Represents positive contribution to department performance." *Id.* at 2.

14. In 2011 and 2012, Ms. Lewis was eligible to take FMLA. Ms. Lewis worked more than 1,250 hours in the preceding 12 months and her employer has more than 50 employees.

15. On August 28, 2011, Ms. Lewis' mother died after several months of medical problems. During her mother's illness, Ms. Lewis used FMLA to take her mother to doctor's appointments, help with daily activities, etc.

16. After her mother's death, Ms. Lewis became the primary caregiver for her mentally and physically challenged sister Marilyn. Marilyn Lewis is currently 70 years old. Ms. Lewis holds the Power of Attorney for Marilyn Lewis. Marilyn Lewis' conditions include schizophrenia, glaucoma, high blood pressure, and diabetes. She is developmentally delayed. Ms. Lewis helps her sister by transporting her to medical appointments, attending medical appointments, caring for her, and assisting her with the normal activities of daily living, such as feeding, bathing, dressing. Ms. Lewis' supervisors were aware of her family responsibilities.

17. Ms. Lewis serves in the capacity of her sister's parent, also known as *in loco parentis*. In the months leading up to her mother's death, when Ms. Lewis was taking FMLA to care for both her mother and her sister, Ms. LaFauci became critical of Ms. Lewis.

18. Ms. Lewis received her next annual performance review on June 28, 2011.

Ms. Lewis received an overall rating of "Meets Expectations," which was different than her previous ratings of "Exceeds Expectations." For the first time ever, Ms. Lewis received a rating of "Needs Improvement" in the categories for Productivity and Reliability on her performance review. These negative ratings occurred one month after Ms. Lewis returned from FMLA on May 16, 2011, during which she cared for her dying mother and continued to care for her sister. Ms. Lewis received positive ratings on her 2010 review in these very same categories.

19. Due to either ignorance of the anti-retaliation provision in the FMLA, deliberate indifference, or lack of training, Ms. LaFauci invoked Ms. Lewis' protected leave status as a basis for the less favorable rating. Under the heading entitled "Plans for Improvement," Ms. LaFauci criticized Ms. Lewis' reliability, which had never been in doubt before. "It is essential that Tina works to improve her reliability. As stated above, we have temporarily adjusted hours to ensure that she can commit to a set schedule." Ms. Wholley knew or should have known that Ms. Lewis' time off was protected under the FMLA. Ms. Wholley endorsed Ms. LaFauci's improper reference to Ms. Lewis' FMLA. Ms. Wholley and Ms. LaFauci interfered with Ms. Lewis' right to take FMLA by citing it as a factor in her performance review. They discouraged her from applying for time off under the FMLA.

20. Other employees were granted time off under the FMLA without any negative consequences. For example, co-worker Nicholas Curley works for Ms. LaFauci in the Copy Center. After Mr. Curley's son was born, Ms. LaFauci granted him time off under the FMLA. Ms. LaFauci did not resist Mr. Curley's request or criticize him for taking time off. Ms. Lewis believes that Ms. LaFauci allowed co-worker, Marie Fratto, to take

time off to take care of her medical condition without any repercussions. Upon information and belief, they did not receive negative reviews or job warnings.

21. Ms. Lewis decided to not challenge her 2011 review. Ms. Lewis needed her job to take care of her family and herself. Ms. Lewis figured her job was not at risk because she received an overall rating of "Meets Expectations." Ms. Lewis reasonably believed that the ratings of "Needs Improvement" were an aberration.

22. In early 2012, Ms. Lewis asked to take time off or a flexible work schedule under FMLA in order to care for her sister's medical needs. Ms. Lewis wanted to adjust her start and stop time by 30 minutes on both ends. Ms. Lewis remained *in loco parentis* for her sister, Marilyn Lewis. She continued to be responsible for the daily care and financial support of her physically and mentally challenged sister.

23. The defendants denied Ms. Lewis' request and interfered with her right to take FMLA. They refused to give her a flexible schedule or incremental leave under the FMLA. Ms. Lewis had to use vacation time to take care of her sister. She had to hire people to help transport her sister to medical appointments when she was not able to use FMLA.

24. Contemporaneous with the illegal denial of FMLA, Ms. LaFauci gave Ms. Lewis what she called a "Second Written Warning" on February 8, 2012. Ms. Wholley coordinated the warning with Ms. LaFauci. In the Second Written Warning, Ms. LaFauci and Ms. Wholley, acting on behalf of Suffolk, interfered with Ms. Lewis' right to take FMLA and retaliated against Ms. Lewis. Ms. LaFauci criticized Ms. Lewis' reliability and productivity. Even though Ms. Lewis was entitled to take incremental leave under the FMLA to care for her sister, Ms. LaFauci and Ms. Wholley refused.

6

25. Ms. LaFauci falsely stated in the Second Written Warning, dated February 8, 2012, that the 2011 performance review served as a First Written Warning, "This letter serves as a second written warning for inadequate performance of job responsibilities.  In your performance evaluation dated 5/30/2011, we discussed areas needing improvement including communication, reliability and productivity."  This is demonstrably untrue. As pointed out earlier, Ms. Lewis received an overall rating on the 2011 performance review of "Meets Expectations."

26. Suffolk deviated from its normal procedures by leapfrogging to a Second Written Warning without first giving Ms. Lewis a First Written Warning. Ms. LaFauci falsified records when she retroactively labeled the 2011 as a first written warning. Ms. Wholley, as the Human Resources representative, knew or should have known that Ms. LaFauci was deviating from standard practices.  Ms. Wholley actively participated in this improper warning.

27. Less than four months later, on May 25, 2012, Suffolk notified Ms. Lewis she was chosen for termination under the pretext of a reduction in force, effective June 1, 2012.   Suffolk fired Ms. Lewis from a job at which she excelled. Suffolk retained other, younger employees than Ms. Lewis.  Suffolk replaced Ms. Lewis with her younger co-worker, Marie Fratto.

28. According to a document Suffolk generated at the time of the RIF, Ms. Lewis was singled out for termination. The document shows that the decisional unit had 17 Staff Assistants. The only Staff Assistant who was terminated was Ms. Lewis.

### COUNT I – VIOLATION OF PLAINTIFF'S PRESCRIPTIVE RIGHTS UNDER THE FMLA – ALL DEFENDANTS

29. Plaintiff adopts its allegations in paragraphs 1-28 as though fully set forth

herein.

30. As an eligible employee for FMLA, the defendants had a duty to avoid interfering with, restraining or otherwise denying Ms. Lewis' exercise or attempt to exercise her rights under the FMLA, also known as a prescriptive right. Because the issue is a right to an entitlement, Ms. Lewis was due this benefit, regardless of the intent of the defendants.

31. The defendants interfered with and violated Ms. Lewis' proscriptive right to FMLA when they failed to properly respond to Ms. Lewis' request for FMLA in 2011 and 2012 to take care of her sister, Marilyn.

32. As a result of the defendants' actions, Ms. Lewis has been damaged in an amount to be determined at trial, including but not limited to lost past and future wages and benefits.

**COUNT II – VIOLATION OF PLAINTIFF'S PROSCRIPTIVE
RIGHTS UNDER THE FMLA/RETALIATION – ALL DEFENDANTS**

33. Plaintiff adopts its allegations in paragraphs 1-32 as though fully set forth herein.

34. Under the FMLA, Ms. Lewis had a right to request FMLA and not face discrimination or retaliation.

35. Ms. Lewis took or attempted to take protected time off under the FMLA. As a result of the exercise of these rights, she experienced adverse job actions, including the Second Written Warning, and the selection of her for the RIF. Suffolk's partial, incomplete compliance with FMLA does not inoculate it from liability.

36. As a result of the defendants' actions, Ms. Lewis has been damaged in an amount to be determined at trial, including but not limited to lost past and future wages

and benefits.

WHEREFORE, Ms. Lewis requests the following relief:

A. Damages as proven at trial.

B. Lost wages and benefits.

C. Liquidated damages.

D. Other compensation to which she is entitled.

E. Attorneys' fees and costs.

F. Prejudgment and postjudgment interest.

G. Any other relief to which she is entitled.

**PLAINTIFF REQUESTS A JURY TRIAL ON ALL ISSUES.**

PLAINTIFF ANNESTINE LEWIS
By her attorney,

/s/    Pamela A. Smith

BBO No. 469570
Law Office of Pamela A. Smith
60 William Street, Suite 300
Wellesley MA 02481
(617) 969-2900
pam@pamsmithlaw.com

April 23, 2013